UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES NETZEL,

    Plaintiff,

v.

CROWLEY AMERICAN
TRANSPORT COMPANY and
RELIANCE STANDARD INSURANCE
COMPANY,

    Defendant.

Case No. 04-73869

HONORABLE AVERN COHN

_____/

**DECISION AND ORDER GRANTING DEFENDANTS' MOTION
FOR JUDGMENT AND DISMISSING THE CASE.**[1]

**I. Introduction.**

This is an ERISA case (Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq.). Defendant Reliance Standard Insurance Company (Reliance) issued a group long term disability policy to Columbus Line USA, Inc. (Columbus). The policy was part of Columbus's employee welfare benefits plan in which plaintiff Charles Netzel (Netzel) was enrolled as an employee of defendant Crowley American Transport Company (Crowley), a Columbus affiliate company.

Before the Court is Defendant's Motion for Summary Judgment. Reliance argues two basis for judgment in its favor: (1) Netzel failed to exhaust his administrative

---

[1] The Court originally scheduled this matter for hearing. Upon review of the parties' papers, however, the Court finds that oral argument is not necessary. See E.D. Mich. LR 7.1(e)(2).

remedies; and (2) Netzel was not disabled under the terms of the policy.[2]  For the following reasons, the Defendants' motion will be granted.

## II. Legal Standard.

In Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609 (6th Cir. 1998), the Court of Appeals for the Sixth Circuit held that summary judgment procedures may no longer be used in the Sixth Circuit in denial of benefits actions under ERISA.  In Wilkins, the Court of Appeals decided a district court should adjudicate an ERISA action as if it were conducting a standard bench trial and, therefore, determining whether there is a genuine issue of fact for trial would make little sense.  Id. at 618-19 (Gilman, J., concurring in part) (articulating the decision of the court of appeals on the issue regarding the summary judgment standard).

Accordingly, the Court will decide this matter under the guidelines set forth in Wilkins[3] by making findings of fact and conclusions of law based solely upon the

---

[2] Reliance's motion initially argued that Netzel's claim was barred by a contractual limitations period.  Reliance withdrew this argument in its reply brief.

[3] The court of appeals' "Suggested Guidelines" are as follows:

1. As to the merits of the action, the district court should conduct a de novo review based solely upon the administrative record, and render findings of fact and conclusions of law accordingly.  The district court may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator.
2. The district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part.  This also means that any prehearing discovery at the district court level should be limited to such procedural challenges.
3. . . . the summary judgment procedures set forth in Rule 56 are inapposite to ERISA actions and thus should not be utilized in their disposition.

administrative record.[4]  See Eriksen v. Metro. Life Ins. Co., 39 F. Supp. 2d 864 (E.D. Mich. 1999).

### III. Analysis.

### A. Findings of Fact.[5]

### 1.

Netzel worked for 28 years as a corporate sales manager.  The position was a sedentary job with some stress.  Netzel began experiencing heart trouble in about 1986; he continued to work.  Netzel's heart trouble resulted in a triple by-pass in 1992, after which Netzel returned to work following a full recovery.  On August 16, 2000, Doctor Samir Dabbous (Dabbous), Netzel's cardiologist, recommended that Netzel undergo a stress test to examine his continuing heart problems.  Based on the stress test and other physician opinions, on August 28, 2000, Dabbous reported that Netzel was disabled and completely limited from working due to a heart condition that required by-pass surgery.  Netzel applied for short term disability benefits stating he suffered from coronary artery disease, diabetes, and hypertension.  Netzel listed Dabbous and Doctor Allan Dobzyniak (Dobzyniak), an internal medicine specialist, as treating physicians.

---

Wilkins, 150 F.3d at 619.

[4] The Administrative Record lacks a table of contents, is not in chronological or any other order to facilitate the Court's work, contains multiple copies of the same document scattered throughout, and mixes older medical records with records from immediately following Netzel's 2000 by-pass surgery.  The parties should submit a more coherent record in future cases.

[5] The background is gleaned primarily from the Administrative Record.

The parties followed the Court's summary judgment motion practice guidelines but for the following exception: the parties did not highlight the relevant portions of the Administrative Record.  For the Court's motion practice guidelines, see http://www.mied.uscourts.gov/_practices/Cohn/motion/htm.

Reliance approved and paid all short term benefits.  Netzel then applied for long term disability benefits.

The Reliance policy contains the following standard to qualify for long term disability benefits.

> "Total Disabled" and "Total Disability" mean...that as a result of an Injury or Sickness, during the Elimination Period[6] and thereafter an Insured cannot perform the material duties of his/her regular occupation;
>
> (1) "Partially Disabled" and "Partial Disability" mean that as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her regular occupation on a part-time basis or some of the material duties on a full-time basis.  An Insured who is Partially Disabled will be considered Totally, except during the Elimination Period; and
>
> (2) "Residual Disability" means being Partially Disabled during the Elimination Period.  Residual Disability will be considered Total Disability.

The policy states the circumstances under which benefits will be paid.

> INSURING CLAUSE: We will pay a Monthly Benefit if an Insured:
> (1) is Totally Disabled as the result of a Sickness or Injury covered by this Policy;
> (2) is under the regular care of a Physician;
> (3) has completed the Elimination Period; and
> (4) submits satisfactory proof of Total Disability to us.

**2.**

Netzel had successful by-pass surgery on or about September 5, 2000.  Doctor Bruce Washington (Washington) performed the surgery.  Danielle McLemore (McLemore), a Reliance claims examiner, approved Netzel's application and Reliance began paying long term disability benefits on January 31, 2001.  Reliance also encouraged Netzel to apply for Social Security Disability Benefits.

---

[6]The Elimination Period is a period of 90 consecutive days of Total Disability beginning on the first day of Total Disability for which no benefit is payable.

Reliance reviewed available medical evidence in granting long term disability benefits. Netzel had received extensive post-operation care. From September 5 through September 9, 2000, Netzel was examined daily and reported some pain and shortness of breath, but was considered in stable condition. On September 7, 2000, Doctor George Nahhas examined Netzel and reported he was doing well, had no significant complaints, and would benefit from medication and rehabilitation.

On September 20, 2000, Dabbous treated Netzel. Dabbous reported that Netzel experienced no chest pain, had a blood pressure reading of 128/80 and clear lungs, and had an unremarkable cardiac examination. Netzel's electrocardiogram showed normal sinus rhythm. Dabbous prescribed two medications and ordered Netzel to return in a week for another evaluation.

On September 27, 2000, Netzel visited Dabbous again, and reported mild left chest pain and occasional difficulty breathing. Netzel's blood pressure was 130/80 and he had clear lungs. Dabbous performed an electrocardiogram and echocardiogram on Netzel. Dabbous reported Netzel in generally normal physical condition.

On September 28, 2000, Washington examined Netzel for the first time following the operation. Washington reported that Netzel: has continued to increase his exercise regimen without recurrent angina or shortness of breath; should continue to increase his exercise level, but should avoid heavy lifting for an additional month. Washington ordered follow up visits with Dobzyniak.

On October 2, 2000, Dabbous examined Netzel. Netzel underwent an exercise stress echocardiography study and an echocardiogram. Dabbous observed a slight decrease in exercise tolerance, no evidence of valvular dysfunction, and a negative

exercise stress echocardiography study. Dabbous ordered Netzel to undergo cardiac rehabilitation and to return for re-evaluation in three months.

An examination by Doctor Frankju Arevalo (Arevalo) on November 7, 2000, showed some post operative residues, a stable heart size, and clear lungs. Arevalo concluded that Netzel had "no acute cardiopulmonary abnormalities."

On December 4, 2000, Dabbous reported that Netzel's cardiac functional capacity was completely limited,[7] as he could sit, stand and walk one to three hours in an eight hour work day, but could not bend, squat, climb, reach, kneel, crawl or use foot controls. Despite these restrictions, Dabbous tentatively predicted that Netzel could return to work on January 8, 2001.

Dobzyniak reported on December 18, 2000, that Netzel was unable to work, and doubted he would be able to return to work. Dabbous reported Netzel's heart as having only a slightly limited functional capacity, upgrading him two levels.

**3.**

Beginning in January, 2001, Reliance's claim review department began questioning Netzel's inability to return to work and requested additional recent medical documentation. Doctor Goldstein (Goldstein), a Reliance physician, reviewed Netzel's file to determine whether he was still totally disabled from his regular occupation. McLemore requested copies of stress tests, updated medical records, and an explanation as to why Netzel could not return to work from Dobzyniak and Dabbous. McLemore repeated these requests through mid-July, 2001.

In March, 2001, Reliance determined the medical evidence did not "support

---

[7] The four levels of cardiac functional capacity are: no limitation, slight limitation, marked limitation, and complete limitation.

ongoing impairment." Reliance paid benefits anyway through April 26, 2001. However, in April, 2001, pending receipt of additional medical records, Reliance suspended Netzel's disability benefits. Reliance told Netzel about its need for additional medical records and that benefits would be provided if he was totally disabled.

On June 12, 2001, Dabbous sent a letter to Reliance stating that Netzel suffered from coronary artery disease with recurrent coronary stenosis. Dabbous stated Netzel's medical history made even sedentary job duties a risk to his cardiac status. On July 31, 2001, McLemore spoke with Netzel's wife about needing more documentation supporting Dabbous's letter to approve benefits. McLemore asked to review the medical tests upon which Dabbous' opinion was based, such as medical records, stress tests and treatment notes.

After a review of Netzel's medical file, on July 19, 2001, Goldstein observed that Netzel could have returned to work by December 1, 2000, and that Dabbous's June 12, 2001, letter included no objective data to refute this determination.

In an August 15, 2001, letter, Dobzyniak reported Netzel's medical history, dietary restrictions, and pharmaceutical needs, and noted that Netzel worked under some stress during the time between by-pass surgeries, from 1992 to 2000. Dobzyniak concluded that the stress related to Netzel's job necessitated a medical retirement, as the stress would disadvantage his long term well being. Dobzyniak did not attach any medical documents to this letter.

Goldstein again reviewed Netzel's medical file following receipt of the Dobzyniak letter. Goldstein said his opinion did not change. Goldstein noted that the October 2, 2000, exercise stress echocardiography study was the last such testing, and he did not

consider work stress to be a credible preclusion from working.

In October, 2001, Reliance sent Netzel a letter informing him that the medical records did not support a finding of total disability, that his benefits would not be reinstated, and that he had a right to appeal the decision. The letter included the address where the appeal could be sent, and requested any additional medical tests or documentation supporting Netzel's claim. Shani Rummel, a Crowley employee, informed Reliance that Netzel would be appealing the decision and had hired an attorney, but Netzel did not file a formal appeal or submit any documents.

### B. Conclusions of Law.

### 1. Exhaustion of Administrative Remedies.

#### a.

ERISA's administrative scheme "requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." Miller v. Metro. Life Ins. Co., 925 F.2d 979, 986 (6th Cir. 1991). ERISA itself and its legislative history created the exhaustion requirement, noting that "every employee benefit plan shall...afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." Constantino v. TRW, Inc., 13 F.3d 969, 974 (6th Cir. 1994) (citing 29 U.S.C. § 1133(2) (internal citations omitted)). Exhaustion of administrative remedies is not required if it is shown an appeal would be futile. Constantino, 13 F.3d at 974-75.

#### b.

Netzel did not formally appeal Reliance's decision. Netzel makes three arguments as to why his case still should be considered on the merits. First, Netzel

says his employer's phone call to Reliance, in which Netzel's disagreement with the decision to deny benefits was registered, put Reliance on notice that it should reconsider its decision. Netzel says his persistence in contacting Reliance during the period his benefits were suspended further fulfills the exhaustion requirement. Second, Netzel says exhaustion is excused when the insurer fails to advise a claimant with what additional proof might be required to sustain an appeal, in violation of 29 C.F.R. § 2560.503-1. Netzel says neither the denial letter nor the long term disability insurance policy included the required information.

Third, Netzel says an appeal would have been futile, as his claim certainly would have been denied on appeal. Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 418 (6th Cir. 1998). Netzel says an appeal in his case was futile because Goldstein made a credibility decision regarding the opinions of two doctors without speaking to either doctor or Netzel. Netzel says an appeal would have confirmed the prior decision.

#### c.

Netzel did not exhaust his administrative remedies. His employer's phone call to Reliance expressing Netzel's disagreement with the decision did not constitute an appeal. Contrary to Netzel's argument, the October, 2001, denial letter stated the basis for rejecting the claim, how to appeal the decision, and requested additional medical tests and documentation to support his claim. The letter notes that Dabbous and Dobzyniak's letters lacked objective data supporting their assessment. While the policy does not include the appeals process, the information in the denial letter complies with ERISA requirements. McCarthy v. Nat'l City Corp., 419 F.3d 437, 444 (6th Cir. 2005) (a court reviews a denial notice for "substantial compliance" with ERISA requirements). An

appeal would not have been futile because Reliance would have to reconsider its decision to deny benefits upon receipt of medical records supporting Netzel's claim. Consistent with its repeated requests, Netzel's submission of medical test results supporting his claim might have changed the result, and nothing suggests otherwise.

### 2.  Netzel's Disability.

### A. Standard of Review.

The parties agree that the standard of review in this case is whether the denial of benefits was arbitrary and capricious because Reliance had discretionary authority to construe and interpret the policy.  See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Miller v. Metro. Life Ins. Co., 925 F.2d 979, 983 (6th Cir. 1991).  This standard is the "least demanding form of judicial review." Administrative Committee of the Sea Ray Employees Stock Ownership and Profit Sharing Plan v. Robinson, 164 F.3d 981, 989 (6th Cir. 1999).  A decision regarding eligibility for benefits is not arbitrary and capricious if the decision is "rational in light of the plan's provisions." Daniel v. Eaton Corp., 839 F.2d 263, 267 (6th Cir. 1988).  See also Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376, 381 (6th Cir. 1996).  Stated differently, "[w]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." Davis v. Kentucky Fin. Co. Retirement Plan, 887 F.2d 689, 693 (6th Cir.1989) (internal quotations and citation omitted).  See also Perez v. Aetna Life Ins. Co., (en banc) 150 F.3d 550, 555 (6th Cir. 1998).

### B.  Argument.

Netzel says Reliance's denial of benefits was arbitrary and capricious because: benefits were denied based on a credibility decision made by a person who never

examined him; Reliance disregarded two doctors' opinions saying he was disabled; and there is no basis in the record for the decision.  Netzel also has attached the Social Security Administration's (SSA) decision granting him disability benefits retroactive to February, 2001, as evidence that he was totally disabled under the policy.

Reliance says its review of Netzel's medical records included documentation of his heart condition dating back to 1986.  Reliance says Netzel continued to work throughout the 1990s while experiencing some chest pain until 2000, despite undergoing an angioplasty in 1988, a triple by-pass in 1992, and other related heart and pulmonary procedures.  Netzel returned to work within months of his 1992 by-pass. Throughout the 1990s, physicians monitored Netzel's heart condition, Reliance says, and Netzel continued to work despite reporting some chest pain.  After a heart catheterization, on August 24, 2000, Netzel was scheduled for by-pass surgery, Reliance says, at which time Dabbous recommended that Netzel remain off work until after the surgery.  Netzel underwent successful by-pass surgery on September 5, 2000. After surgery, Reliance says Netzel's physical condition gradually improved and, despite its repeated requests, it never received medical documentation of continued total disability.  Without documentation, and considering Netzel's prior return to work following heart surgery, Reliance cancelled Netzel's long term disability benefits, and says it was not arbitrary and capricious in doing so.

### C.  Resolution.

Following surgery, Reliance cites numerous medical reports in which Netzel had mild or no chest pain, and a continuous increase in exercise regimen.  By November 7, 2000, Netzel experienced "no acute cardiopulmonary abnormalities."  On December 4,

2000, Dabbous reported that Netzel's cardiac functional capacity was completely limited, as he could sit, stand and walk one to three hours in an eight hour work day, but could not bend, squat, climb, reach, kneel, crawl or use foot controls. Despite these restrictions, Dabbous tentatively predicted that Netzel could return to work on January 8, 2001. Two weeks later, on December 18, 2000, Dabbous upgraded Netzel's cardiac functional capacity two levels to slightly limited, suggesting Netzel was recovering.

Reliance monitored Netzel's condition and asked for ongoing reports from his visits with physicians. Reliance paid benefits until April, 2001, despite not receiving additional documentation. Finally in June and August, 2001, Reliance received letters from Dabbous and Dobzyniak, respectively. Both doctors concluded that returning to work would put Netzel at risk, but neither attached any medical reports or test results. In performing a medical record peer review for Reliance, Goldstein noted that Netzel had not undergone an echo exercise test since October, 2000, and that neither doctor provided any medical tests, such as a stress test, in support of their conclusions. Based on the evidence before him, Goldstein concluded that Netzel could return to work.

Netzel argues that the fact that he has been found disabled by the Social Security Administration (SSA) has some bearing on whether he is disabled under the plan. This argument lacks merit. First, it is settled that a court's review is limited to the evidence before the plan administrator as contained in the Administrative Record. See Wilkins, 150 F.3d at 516. Because this evidence is not part of the Administrative Record, it cannot be considered. Second, even if the award of Social Security benefits under the SSA's rules is part of the record, this does not necessarily mean that he was disabled under the plan, as the SSA's opinion is just one factor for the Court to consider

in the context of the entire record. Calvert v. Firstar Fin. Inc., 409 F.3d 286, 295 (6th Cir. 2005).

The fact that Netzel has a heart condition does not mean he is totally disabled and prevented from working. Jordan v. Northrop Grumman Corp., 370 F.3d 869, 877 (9th Cir. 2004). Reliance made countless attempts to acquire medical documentation supporting Netzel's total disability claim. The Administrative Record contains only a few references to any medical examinations performed in 2001, and contains no test results. Netzel's surgery was a success and he was being treated with medication. Dabbous and Dobzyniak submitted letters expressing their opinion that Netzel's job was too stressful to risk further health complications. However, they never attached medical documents supporting their conclusion, and the risk of future deterioration is not the same as being currently disabled. Coker v. Metro. Life Ins. Co., 281 F.3d 793 (8th Cir. 2002). Given the lack of updated medical test results, Reliance was not arbitrary or capricious in denying Netzel's long term disability claim.

### 3. Conclusion.

Judgment in defendants' favor is GRANTED due to Netzel's failure to exhaust administrative remedies and because Reliance's decision to cancel Netzel's long term disability benefits was not arbitrary and capricious. This case is DISMISSED.

SO ORDERED.

Dated: February 22, 2006           s/Avern Cohn
                                   AVERN COHN
                                   UNITED STATES DISTRICT JUDGE